OPINION
On June 22, 1991, appellant, Betty J. Zink nka Betty J. Mullins, and appellee, Floyd L. Zink, were married. One child was born as issue of said marriage, Mitchell Lee Zink born May 22, 1993. On October 4, 1994, appellant filed a complaint for divorce. Appellant was granted a divorce on December 15, 1994 and was named residential parent of the parties' child. On July 16, 1998, appellee filed a motion for modification of parental rights and responsibilities. Appellee claimed appellant's move to Ashland County, Ohio with her new husband, Ernest Mullins, was not in the child's best interests. By order filed July 16, 1998, the trial court granted ex parte temporary custody of the child to appellee. A hearing before a magistrate was held on July 30, 1998. By order filed same date, the magistrate affirmed the ex parte order and continued custody with appellee pending final hearing. Subsequent objections were overruled by the trial court on September 3, 1998. Hearings before the trial court were held on September 22, 1998 and October 2, 1998. By entry filed October 6, 1998, the trial court found two changes in the circumstances of the child, the entry of Mr. Mullins into his life and appellant's move to Ashland. The trial court found these changes were not in the child's best interests and granted appellee's motion for change of custody. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ISSUING AN EX PARTE ORDER CHANGING CUSTODY WHEN NO EMERGENCY EXISTED AND WHERE PROCEDURAL AND LEGAL SAFEGUARDS WERE IGNORED.
II
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT THERE HAD BEEN A CHANGE OF CIRCUMSTANCES, AS REQUIRED UNDER THE STATUTE, TO PERMIT A REALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES.
III
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN PERMITTING THE TELEPHONE DEPOSITION OF TAMARIN ANGLIN TO BE USED AS EVIDENCE IN THE TRIAL OF THIS MATTER.
IV
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO CONDUCT AN INDEPENDENT INVESTIGATION INCLUDING AN INTERVIEW WITH THE MINOR CHILD AND FAILING TO APPOINT A GUARDIAN AD LITEM. R.C. 3109.04 REQUIRES THAT THE COURT CONDUCT AN INDEPENDENT INVESTIGATION BEFORE FINDING THAT IT IS IN THE BEST INTEREST OF A CHILD TO CHANGE CUSTODY.
 I
Appellant claims the trial court erred in issuing the ex parte order changing custody when no emergency existed. We disagree. The trial court has broad discretion in custody proceedings. Trickey v. Trickey (1952), 158 Ohio St. 913. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. By order filed July 16, 1998, the trial court granted ex parte temporary custody of the child to appellee and set the matter for hearing before a magistrate for July 30, 1998, fourteen days after the order. By order filed July 30, 1998, the magistrate found the following: 3. The Movant Father became concerned over the welfare of the minor child when the Plaintiff mother moved from the Guernsey County area to Vermillion/Ashland, Ohio. In the Guernsey County residence, the Plaintiff Mother was surrounded by her kin, who apparently had taken it upon themselves to keep an eye on things. 4. The Plaintiff's family disapproves of the Plaintiff's current husband and his relationship with the child herein. His disciplinary methods regarding the child have been the subject of a Muskingum County Children Services Boards's investigation and criticism. There is other Court evidence of his volatile temper as well. There is evidence that he has violated the conditions of a suspended sentence for disorderly conduct. The Cambridge Municipal Court has a Bench Warrant out for his arrest. Although the Movant and the Respondent's family do not criticize the Plaintiff's care of the child, they fear for the welfare of the child as long as the current husband dominates the household outside of the observation of the family.
On August 4 and 19, 1998, appellant filed objections to the magistrate's decision. By judgment entry filed September 3, 1998, the trial court overruled the objections without hearing after reviewing the "tape-recordings" and noting a full evidentiary hearing on the matter was set for September 22, 1998. Further, the trial court ordered the magistrate to review the objections and make further findings of fact and conclusions of law. We note the trial court assumed control of the matter and held evidentiary hearings on September 22, 1998 and October 2, 1998 without further recommendations from the magistrate. Because the trial court personally, commendably and expeditiously attended to the matter, there was no abuse of discretion in granting the temporary order. The trial court's final order came eighty-four days after the temporary order. Assignment of Error I is denied.
 II, V
Appellant claims the trial court erred in finding "changed circumstances," and the custody decision based upon those circumstances and the best interests of the child was against the manifest weight of the evidence. We disagree. As previously stated, a trial court has broad discretion in custody proceedings. Trickey; Blakemore. However, said discretion is not absolute and must be guided by R.C. 3109.04(E)(1)(a) which governs the modification of parental rights and responsibilities and states as follows: (E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent. (ii) The child, with the consent of the residential parent or both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent. (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610. In its conclusions of law, the trial court made the following specific statements regarding change of circumstances and best interests of the child: 2. The Court concludes as a matter of law that two changes in the circumstances of the Mitchell have occurred since the prior decree of this Court placing his custody with his Mother. They are:
A) The entry into his life of his stepfather, Ernest Mullins; and
 B) His Mother's move to Ashland, Ohio, to accept better employment — which removes the so-called `safety net' of her family, who reside in the Guernsey County area and who have been very concerned regarding Mitchell and potential abuse in the past.
 3. The Court concludes as a matter of law, based upon the facts and evidence before the Court in this case at this time, that the harm likely to be caused by a change of environment for Mitchell is outweighed by the advantages of the change in environment to the child. The Court concludes that Mitchell's Father and Stepmother are providing a loving and caring home. The Court concludes that the Mother dearly loves her son, but her household and environment (to which Mitchell would be exposed) in Ashland, Ohio, without the so-called `safety net' of her family, is less desirable than that of the Father's home at this time.
 4. The Court concludes as a matter of law, based upon all of the facts in evidence in this case, that a modification of the parental rights and responsibilities for the care of Mitchell is necessary to serve Mitchell's best interest.
In support of these conclusions, the trial court made the following specific findings of fact:
 11. The Court finds that the Stepfather (Ernest Mullins) has been convicted in the past of `Domestic Violence' and `Disorderly Conduct'. The `Disorderly Conduct' stems from an assault on Don Ryan (his brother-in-law) who was at the time the Mullins' next-door neighbor.
 12. The Court finds that Ernest Mullins' prior marriage ended in divorce in Lorain County Domestic Relations Division Case No. 95-DU-049607 filed June 11, 1996. That Decree (See Defendant's Exhibit H) holds in abeyance his visitation rights until he completes a seminar for separated parents and files a motion to establish an order of visitation and companionship. The Court finds that Mr. Mullins now questions the paternity of Michael Mullins (DOB: 2/2/94) and is not exercising visitation rights with the child that was born as issue of his prior marriage.
* * *
 14. The Court finds that immediately after having temporary custody placed with his Father, Mitchell would cover his head with his hands and go into a so-called `fetal position', whenever he spilled anything — like milk, food, etc. In part, because of this, the Father took his son to see Tamarin Anglin, (a certified clinical social worker and a licensed clinical social worker in Indiana, with a master's degree in social work and a bachelor's degree in psychology, and prior background and training in family and children's services).
 15. The Court finds that Mitchell Zink is currently in counseling in Ft. Wayne, Indiana, with Tamarin Anglin. Her testimony (given by deposition taken September 18, 1998) states that she has seen Mitchell on 4 visits; that he has made statements (for the purposes of diagnosis and treatment) that Ernest Mitchell (sic) `hits me'; that Mitchell enjoys living with his father; that he is scared of his Stepfather because he `whips me with his hands all over'; that Mitchell is `scared' of him; and that Ernie hits him when his Mother is not around and `she doesn't know'. The opinion of Tamarin Anglin is that Mitchell has adjusted well to living with his Father and Stepmother; that he clearly talks about Ft. Wayne as his home; and that his Father sets limits with his son and appropriately disciplines him as needed.
 16. The Court finds that Mitchell Zink's maternal grandfather, Eugene Gill (who is a pastor) became so concerned over the bruising which he observed on Mitchell, that he took a video tape recording. The bruising observed by the grandfather on Mitchell was explained by Ernest Mullins and Betty Mullins as having been caused when Mitchell fell, straddling a bed rail. The grandfather, Mr. Gill, further had concerns regarding the finding of his grandson in Ernest Mullins' care while at the Silver Eagle Tavern (a bar in Cambridge, Ohio) during the Oktoberfest.
* * *
 20. The Court finds that the Mother is concerned regarding the Stepfather, Ernest Mullins', allowing Mitchell to target practice with him with a .22 caliber rifle at age 3 +-4, but had not stated, nor raised, her concerns with her husband.
A review of the record substantiates the trial court's findings. Eugene Gill, appellant's father, testified he observed Mr. Mullins at the Oktoberfest and "[h]e had Mitchell with him that day and was intoxicated." T. at 32. Mr. Gill followed Mr. Mullins to the Silver Eagle Tavern and "went and got his mother from work because I didn't think it was a place for Mitchell to be." Id. Richard Oliver, appellant's neighbor, testified Mr. Mullins "drove like a maniac when he drove down the road" even when Mitchell was in the vehicle. T. at 68. Jennifer Martin, Mr. Mullins's ex-wife, testified she witnessed Mr. Mullins exhibit harsh behavior towards children i.e., "back hand" four month old child, bite an eighteen month old child. T. at 80-81. Ms. Martin testified to an incident involving Mr. Mullins whereby Mr. Mullins was later convicted of domestic violence. T. at 77. Donald Ryan, appellant's brother-in-law, was involved in an altercation with Mr. Mullins resulting in a disorderly conduct conviction for Mr. Mullins. T. at 99, 161. Mr. Ryan observed Mitchell, at age four, shooting a handgun in Mr. Mullins's presence. T. at 102-103. Mr. Mullins admitted to allowing Mitchell to shoot and handle handguns. T. at 294-295. Appellant testified she approves of her son shooting handguns "with supervision." T. at 168. Delores Ryan, appellant's sister, observed a bite mark on Mitchell and was told Mr. Mullins had bitten him. T. at 114. Tamarin Anglin, a therapist, testified Mitchell did not want to see Mr. Mullins anymore because `Ernie hits me * * * [h]e whips me with his hands all over.' Anglin depo. at 18. Upon review, we find sufficient credible evidence to support the trial court's conclusions and no abuse of discretion.
Assignments of Error II and V are denied.
 III
Appellant claims the trial court erred in permitting as evidence Ms. Anglin's telephone deposition. We disagree. We note appellant does not argue the procedure was incorrect but argues if psychological testimony was appropriate the trial court should have ordered an independent evaluation. The admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987) 31 Ohio St.3d 173; Blakemore. Under Evid.R. 611(A), the trial court has control over the mode and order of presenting evidence. By judgment entry filed September 18, 1998, the trial court permitted the telephone deposition. No objection was made on the record or by motion to its admission. T. at 94-95. A claimed error which is not brought to the trial court's attention by objection or otherwise is waived and may not be raised on appeal. Stores Realty Co. v. City of Cleveland (1975), 41 Ohio St.2d 41. Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in failing to conduct an independent investigation including an interview of the child and the failure to appoint a guardian ad litem. We disagree. R.C.3109.04(B)(1) and (C) govern determinations on best interests and state as follows: (B)(1) * * * In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.
 (C) Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. * * *
Neither party requested an interview of the child or a guardian ad litem. We note at the time of hearing, the child was approximately five and a half years old. The trial court held two days of hearings covering some 452 pages of testimony and one deposition. The entire matter was resolved in eighty-four days to mitigate any harm to the child from the ex parte order. We fail to find any stone left unturned in the evidence presented that would have warranted further investigation. We note a home visit was conducted and a report was admitted into evidence. See, Defendant's Exhibit A. Assignment of Error IV is denied.
The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby affirmed.
By Farmer, J. Gwin, P.J. and Edwards, J. concur.